**NOTE CHANGES MADE BY THE COURT**

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor<br><br>                                    Plaintiff,<br><br>    v.<br><br>A&J MEATS, a corporation; PRISCILLA HELEN CASTILLO, an individual; OLIMPIA BRAN, an individual; O'BRAN LEASING COMPANY, a company; and THE RIGHT HIRE, INC., a corporation,<br><br>                                 Defendants. | Case No. 2:24-cv-04507-MCS-SK<br><br>**FIRST AMENDED CONSENT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS A&J MEATS, PRISCILLA HELEN CASTILLO, OLIMPIA BRAN, AND O'BRAN LEASING COMPANY *ONLY* (ECF No. 18)**<br><br>Hon. Mark C. Scarsi, United States District Judge |

      Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor, and Defendants A&J Meats, Priscilla Helen Castillo, Olimpia Bran, and O'Bran Leasing Company (collectively referred to hereinafter as the "A&J Defendants") (Plaintiff and the A&J Defendants are collectively referred to hereinafter as the "Parties") have agreed to resolve the matters in controversy in this civil action and agree to the entry of this Amended Consent Judgment and

Permanent Injunction ("Amended Consent Judgment") as provided below. This Amended Consent Judgment expressly does *not* apply to Defendant The Right Hire, Inc., who is bound by the Consent Judgment at Docket No. 17, and not this Amended Consent Judgment.

## STATEMENTS BY AND AGREEMENTS BETWEEN THE PARTIES

A.     The Acting Secretary filed her Complaint in the above-captioned proceeding, naming *inter alia* the A&J Defendants and alleging violations of Sections 12(c), and 15(a)(4) of the FLSA, 29 U.S.C. §§ 212(c), 215(a)(4).

B.     The A&J Defendants have retained counsel and acknowledge receipt of a copy of the Acting Secretary's Complaint in this action.

C.     The A&J Defendants waive issuance and service of process of the Complaint and their respective summonses and waive their response to the Acting Secretary's Complaint.

D.     The A&J Defendants admit that the Court has jurisdiction over the Parties and the subject matter of this civil action, and that venue lies in the Central District of California.

E.     The Parties agree to waive findings of fact and conclusions of law and agree to the entry of this Amended Consent Judgment without further contest.

F.     The A&J Defendants agree herein to resolve all allegations of the Acting Secretary's Complaint.

G.     The A&J Defendants admit that at all relevant times, they employed employees, including deboner, packer, cleaner, and other employees, who processed poultry and meat at the poultry and meat processing facility located at 15268 Proctor Ave, Suite A, City of Industry, California 91745.

H.     The A&J Defendants represent that they and all individuals and entities acting on their behalf or at their direction have notice of, and understand, the provisions of this Amended Consent Judgment.

I.      The A&J Defendants acknowledge that violating any provision of this Amended Consent Judgment and Permanent Injunction may subject them to fines and penalties, including punitive damages, heightened civil monetary penalties, or contempt.

J.      Pursuant to the Consent Judgment and Permanent Injunction (Docket 17) that the Court entered on June 20, 2024 ("Consent Judgment"), the A&J Defendants were required to pay at total of $380,000.00 within 45 days of the entry of the Consent Judgment, representing $317,484.00 in unlawfully gained profits associated with their illegal employment of minors and $62,516 in civil money penalties. To date, the A&J Defendants have paid and satisfied the $62,516 in civil money penalties owed but have only paid $137,984.83 of the unlawfully gained profits associated with their illegal employment of minors, plus interest, leaving a balance of $181,502.49 owed under the Consent Judgment.

K.      The A&J Defendants have represented to the Acting Secretary that they need additional time to pay the remaining monies due under the Consent Judgment due to an inability to pay and have agreed to provide the Acting Secretary with a deed of trust to secure the remainder of the judgment in exchange for a payment plan. The Acting Secretary has agreed to such terms as set forth below.

L.      The Parties agree that this Amended Consent Judgment is against the A&J Defendants only, and that the June 20, 2024 Consent Judgment continues to remain in effect against Defendant The Right Hire, Inc.

/////

/////

## PERMANENT INJUNCTION

Pursuant to the statements and agreements above, upon joint motion of the attorneys for the Parties, and for cause shown,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that, pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and the inherent authority of the Court, the A&J Defendants, their agents (including any entities contracted to provide labor or payroll services), officers, servants, employees, companies, and all persons and entities acting at their direction or in concert or participation with their direction, are permanently enjoined and restrained from violating the FLSA, including through any of the following manners:

1.    Contrary to Sections 6 and 15(a)(2) of the FLSA, paying any of their employees who in any workweek are engaged in commerce or in the production of goods for commerce or who are employed in an enterprise engaged in commerce within the meaning of the FLSA, wages at a rate less than the local prevailing minimum wage, which cannot be less than $7.25 per hour (or at a rate less than such other applicable minimum rate as may hereafter be established by amendment to the FLSA).

2.    Contrary to Sections 7 and 15(a)(2) of the FLSA, paying any of their employees who in any workweek are engaged in commerce or in the production of goods for commerce or who are employed in an enterprise engaged in commerce within the meaning of the FLSA, less than one and half times the particular employee's regular hourly rate for hours worked in excess of 40 hours in a workweek.

3.    Contrary to Sections 11(c) and 15(a)(5) of the FLSA, failing to make, keep, and preserve records of their employees and of the wages, hours and other conditions and practices of employment maintained by them, as prescribed by the regulations issued, and from time to time amended, pursuant to Section 11(c) of the

FLSA and found in 29 C.F.R. Part 516, including for each employee, the hours worked each day and each workweek, the employee's regular hourly rate of pay, total daily or weekly straight time earnings, overtime rate of pay, total premium pay for overtime hours and identification of each deduction made from the employee's earnings along with a description of the basis/reason and method of calculation of the deduction.

4.    Contrary to Section 11(a) of the FLSA, interfering or obstructing any investigation of the Acting Secretary, including by directing employees not to speak to the Acting Secretary or her representatives and/or otherwise deterring them from cooperating in any investigation of the Acting Secretary through threats and intimidation.

5.    Contrary to Section 15(a)(3) of the FLSA, engaging in any retaliatory action, such as discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under the FLSA, has testified or is about to testify in any such proceeding, or has otherwise exercised their rights under the FLSA by, among other things, testifying or otherwise reporting information to the Acting Secretary, or questioning whether the employer is paying the employee in compliance with prevailing law. Prohibited discriminatory and retaliatory actions include telling employees that communication with the Acting Secretary will result in immigration, legal, criminal or other action against them and/or otherwise deterring employees from cooperating with or speaking to the Acting Secretary's representatives through threats, bribes or intimidation. Other prohibited discriminatory and retaliatory acts include but are not necessarily limited to: termination; discharge; layoffs; threats of termination, discharge or lay off; reverifying the employment eligibility of an employee unlawfully terminated; reduction to employees' work schedules or wages; intimidation; failure to hire; and

providing negative references.

6.    Contrary to Sections 12(c) and 15(a)(4) of the FLSA, 29 U.S.C. §§ 212(c) and 215(a)(4), employing minor children in occupations for periods and under conditions which constitute oppressive child labor in an enterprise engaged in commerce or in the production of goods for commerce, including:

a.    suffering or permitting to work any person under the age of 16 years in violation of 29 C.F.R. § 570.35, including by requiring such persons to work more than 40 hours in any 1 week when school is not in session; work more than 18 hours in any 1 week when school is in session; work more than 8 hours in any 1 day when school is not in session; work more than 3 hours in any 1 day when school is in session, including Fridays; and work between 7:00 a.m. and 7:00 p.m. in any 1 day, except during the summer (June 1 through Labor Day) when the evening hour will be 9:00 p.m.;

b.    suffering or permitting to work any person under the age of 16 years in an occupation prohibited by 29 C.F.R. § 570.33, including but not limited to: work in freezers and meat coolers and all work in the preparation of meat for sale except as permitted by 29 C.F.R. § 570.34(j) and occupations that the Secretary of Labor, may, pursuant to section 3(l) of the FLSA, find and declare to be hazardous for the employment of minors between 16 and 18 years of age or detrimental to their health or well-being such as occupations in or about slaughtering and meat packing establishments; and

c.    suffering or permitting to work any person under the age of 18 years in any hazardous occupation prohibited by 29 C.F.R. § 570.61 and 29 C.F.R. § 570.58, including but not limited to all deboning occupations and all occupations involved in the operation of power-driven hoisting apparatus such as forklifts or other high-lifts.

/ / /

7.     Contrary to Section 12(a) of the FLSA, shipping or delivering for shipment in commerce any goods produced in an establishment in the United States in or about which within thirty days prior to the removal of such goods therefrom any oppressive child labor has been employed.

8.     Contrary to Section 15(a)(1) of the FLSA, transporting, offering for transportation, shipping, delivering, or selling in commerce, and/or shipping, delivering, or selling with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods that have been processed and/or produced by any employee whom the A&J Defendants failed to pay the federal minimum wage or the overtime premium rate for hours worked over forty in the workweek.

9.     Requesting, soliciting, suggesting, or coercing, directly, or indirectly, any employee to return or to offer to return to the A&J Defendants or to someone else for the A&J Defendants, any money in the form of cash, check, or any other form, for wages previously due or to become due in the future, or other forms of monetary damages or relief, to said employee under the provisions of this Amended Consent Judgment, or the FLSA; or accepting or receiving from any employee, either directly or indirectly, any money in the form of cash, check, or any other form, for wages or monetary damages heretofore or hereafter paid to the employee under the provisions of this Amended Consent Judgment or the FLSA.

10.     Within fourteen (14) days of entry of this Amended Consent Judgment, Defendant Priscilla Helen Castillo shall execute the deed of trust to secure the payment described in Paragraphs 36 and 37. The deed of trust shall be recorded against the real property commonly known as 9625 Palm Lane, Fontana, California 92335 ("9625 Palm Lane") and which is attached **to the Parties' stipulation as Exhibit 2**. Defendant Priscilla Helen Castillo represents that she is the sole owner of 9625 Palm Lane, that she has authority to execute the deed of trust attached **to the Parties' stipulation as Exhibit 2**, and that the property is not

encumbered and that has sufficient equity to satisfy the remaining judgment amount of $181,502.49 against the A&J Defendants. The Acting Secretary shall record the deed of trust attached **to the Parties' stipulation as Exhibit 2** once signed. The A&J Defendants agree not to further encumber the property until the deed of trust is recorded. The A&J Defendants further agree that they will immediately take any and all necessary action to cure the deed of trust in the event it is deemed defective, or otherwise offer alternative property as security for the judgment by execution of another deed of trust for such property. If the A&J Defendants default on their payment obligations under the Amended Consent Judgment, they shall be given 30 days' written notice to cure the default (served electronically to counsel of record for the A&J Defendants). If the A&J Defendants fail to cure their default, the A&J Defendants will cooperate with and assist the Acting Secretary in executing on the deed of trust. Within 30 days of the A&J Defendants satisfying the payment obligations of the Amended Consent Judgment, including any interest or penalties for paying the amount due late, the Acting Secretary will provide the A&J Defendants with a deed of reconveyance to effectuate the cancellation and removal of the deed of trust associated with this Amended Consent Judgment. The A&J Defendants will then record the deed of reconveyance provided by the Acting Secretary to terminate the Acting Secretary's deed of trust.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and the inherent authority of the Court, the A&J Defendants, their agents, officers, servants, employees, companies, and all persons and entities acting at their direction or in concert or participation with their direction, shall take the following affirmative actions:

11.     Within ten (10) days of the date of entry of this Amended Consent Judgment, the A&J Defendants shall, for a period of four (4) years, do the

following:

   a. provide the Acting Secretary with the name of any business(es) they operate, use, or lease property to which produces (as defined by 29 U.S.C. § 203(j) and 29 C.F.R. § 570.108) poultry or meat, or which sells or delivers poultry or meat;

   b. provide the Acting Secretary with the names of any poultry or meat processing company any of the A&J Defendants has retained to produce (as defined in 29 U.S.C. § 203(j) and 29 C.F.R. § 570.108) poultry or meat, or which sells or delivers poultry or meat, and include the company name, contact person, telephone number, and business address of each company;

   c. provide to the Acting Secretary all addresses for any location at which they are processing poultry or meat, or engaged in any work related to the processing, sale, or delivery of poultry or meat;

   d. notify the Acting Secretary of any third-party entities, including contractors, that are providing staffing services to the A&J Defendants, with an explanation of the services being provided, and to provide the Acting Secretary with a copy of any contract(s) entered into with such entities; and

   e. provide the Acting Secretary with the A&J Defendants' address, telephone number, and email address, where they agree to be contacted for purposes of communicating about and carrying out the provisions of this Amended Consent Judgment.

  12. For a period of four (4) years from the date of entry of this Amended Consent Judgment, the A&J Defendants must immediately notify and inform the Acting Secretary of any change to any of the information they previously provided to the Acting Secretary as required in Paragraph 11 above, including changes to their business name or corporate form, the location where they operate, and the retention or allowance of any other business or entity to manage employees or

process poultry or meat for them or at their facilities. The A&J Defendants shall notify the Acting Secretary of any such changes no later than three (3) business days after such changes have taken effect.

13.     The A&J Defendants shall inform the Acting Secretary of any changes to their contact information. The A&J Defendants shall notify the Acting Secretary of any such changes no later than three (3) business days after any such changes have taken effect.

14.     Within ten (10) days of the date of entry of this Amended Consent Judgment, the A&J Defendants shall send a package consisting of a copy of the Notice of Rights attached hereto as Exhibit 1, followed in sequence by a copy of this Amended Consent Judgment, to all current employees or employees of any poultry or meat processing company operating at 15268 Proctor Ave, Suite A, City of Industry, California 91745, and in a language that they understand, and post this Amended Consent Judgment and Notice of Rights in such languages in a location or locations visible to all employees, including the entrance to the workplace, any break areas, and in the primary workroom. Within three (3) days of posting the package in the worksite, the A&J Defendants shall send photographs to a Wage and Hour representative demonstrating that this provision has been adhered to.

15.     For a period of at least four (4) years from the date of entry of this Amended Consent Judgment, the A&J Defendants shall ensure that a copy of this Amended Consent Judgment and Exhibit 1 is provided to the following persons or entities and in a language understood by the recipient as follows:

        a.     all future employees upon their retention who are hired or rehired at any poultry or meat processing facility owned, operated, or controlled by any of the A&J Defendants including the facility located at 15268 Proctor Ave, Suite A, City of Industry, California 91745 following the entry of this Amended Consent Judgment;

b.      all persons to whom they offer employment at any poultry or meat processing facility owned, operated, or controlled by any of the A&J Defendants including the facility located at 15268 Proctor Ave, Suite A, City of Industry, California 91745;

c.      all persons or entities providing labor or payroll services to the A&J Defendants or their business operations for any poultry or meat processing facility owned, operated, or controlled by any of the A&J Defendants including the facility located at 15268 Proctor Ave, Suite A, City of Industry, California 91745;

d.      all businesses and workers processing poultry or meat at any poultry or meat processing facility owned, operated, or controlled by any of the A&J Defendants including the facility located at 15268 Proctor Ave, Suite A, City of Industry, California 91745; and

e.      any individual or entity responsible for hiring, firing, supervising, paying, or otherwise managing the A&J Defendants' employees at any poultry or meat processing facility owned, operated, or controlled by any of the A&J Defendants including the facility located at 15268 Proctor Ave, Suite A, City of Industry, California 91745.

16.    For a period of at least four (4) years commencing no later than July 31, 2025, the A&J Defendants shall provide annual FLSA training to all managers and supervisors addressing, at a minimum, the FLSA provisions governing minimum wage, overtime, recordkeeping, child labor, anti-retaliation, and interference. Defendants shall pay an independent third-party contractor, who is not involved in this litigation and is approved by a representative of the Acting Secretary, to conduct this training. A contractor will not be considered independent if it is related to the A&J Defendants on the date of the Consent Judgment or represents the A&J Defendants involved in this action in any dealings with other parties or the Department of Labor. The training shall be for one session of not less

than one hour with an opportunity for questions and answers. Any contractor must make reasonable efforts to communicate with the A&J Defendants' employees in languages with which the employees are comfortable, or if the situation requires, the contractor will hire an interpreter as dictated by a particular employee's circumstances. The A&J Defendants shall provide the Acting Secretary seven days' notice in advance of the training and permit the Acting Secretary's representative to attend the training. The A&J Defendants shall provide proof that this training has occurred within seven (7) days of completing this required training.

17.    For a period of six (6) months from entry of this Amended Consent Judgment, the A&J Defendants shall not terminate, fire, layoff, or furlough any employee, including employees involved in processing poultry or meat, such as deboners, packers, cleaners, or others, or participate in the termination, firing, layoff, or furloughing in any manner of employees involved in the processing of poultry or meat, without first giving the employee and the Acting Secretary notice at least seven (7) days prior to such action describing who is being terminated, fired, laid off, or furloughed, and the non-retaliatory business justification for doing so.

18.    For every employee laid off or terminated between March 1, 2024 and the date that this Amended Consent Judgment is entered, the A&J Defendants shall only provide neutral references for all employees, including employees involved in the processing of poultry or meat, such as deboners, packers, cleaners, or others, upon request from any subsequent employer or any third party, by only providing the dates of the employment and job title of position held; no reference shall be made to any employment law proceedings.

19.    For a period of four (4) years from the date of entry of this Amended Consent Judgment, the A&J Defendants shall allow the Acting Secretary, its

representatives, or agents to enter any location where any of the A&J Defendants are processing, producing, shipping, or delivering for shipment any poultry or meat to provide a one-hour FLSA Notice of Rights training to all nonmanagerial employees of the A&J Defendants or the A&J Defendants' lessees, and/or to freely speak to employees about the A&J Defendants' compliance with this Amended Consent Judgment and the FLSA. The A&J Defendants will tell employees that they can stop working during this training and the A&J Defendants will compensate employees for their time attending this training. The Acting Secretary or its representatives shall be authorized to enter these locations four-times per year to provide the training and speak with employees and shall be permitted to return as necessary to train any employees who may have been absent. Further, to the extent any of the A&J Defendants are leasing property to an employer engaged in poultry or meat processing operations, that defendant shall, as a condition of the lease, require that their lessee agree to the terms of this Paragraph.

20.    For a period of four (4) years from the date of entry of the Amended Consent Judgment, the A&J Defendants shall post signs that are at least three (3) feet long and three (3) feet high at the entrances of any poultry or meat processing facilities in which they operate or that they own, operate, control, or lease to other entities in English, Spanish, and the Guatemalan languages of Qeqchi, and Mam, and in a manner that is conspicuous and visible to all employees and the public, stating that no one under the age of 18 is allowed to work at the facility or engage in deboning work, work in a meat cooler, or operate power driven machinery.

21.    With respect to any person who worked at the poultry processing facilities located at 15268 Proctor Ave., Suite A, City of Industry, CA 91745 or 218 S. 8th Ave., La Puente, CA 91746 which were owned and/or operated by The Exclusive Poultry Inc., Valtierra Poultry LLC, Meza Poultry LLC, or Tony Bran, and who were laid off, fired, or terminated on or after September 28, 2023, the

A&J Defendants shall give a hiring preference to such persons to the extent there are positions available at any entity that produces poultry or meat that the A&J Defendants process or sell. A "hiring preference" means that any available openings will be offered to these employees first before the positions are filled by other employees. In providing an offer, the A&J Defendants shall keep the offer open for at least seven (7) calendar days. Within ten (10) days of the entry of this Consent JudgmentAmended Consent Judgment, and on a monthly basis thereafter for one year, the A&J Defendants shall provide a report to the Acting Secretary detailing (1) the offers of employment they have made to these employees under this Amended Consent Judgment, including such employees' names and contact information; and (2) employees' acceptances or rejections of such offers. The Acting Secretary shall furnish to the A&J Defendants a list of the persons believed to have been laid off, fired, or terminated on or after September 28, 2023 within seven (7) days of execution of this Amended Consent Judgment, which Defendants shall use to enable them to comply with this Paragraph. The Acting Secretary may update the list, as necessary and appropriate, following the seven (7) day period, and any updated list shall become the operative list under this Paragraph. If the Acting Secretary does not provide the A&J Defendants with a list, the A&J Defendants shall utilize the list of employees that the Acting Secretary previously provided to the A&J Defendants by email dated July 1, 2024 pursuant to the previously issued Consent Judgment.

22.    The A&J Defendants shall require either a certificate of age pursuant to 29 C.F.R. 570 Subpart B or documentary evidence of age that meets the requirements of 29 C.F.R. § 570.7, for any employee if there is any reason to believe that the employee's age may be below the applicable minimum age for the occupation in which the employee is to be employed. Such certificate or documentary evidence of age should always be obtained where the employee

claims to be only 1 or 2 years above the applicable minimum age for the occupation in which the employee is to be employed. A certificate or documentary evidence of age shall also be obtained for every employee claiming to be older than 2 years above the applicable minimum age if the employee's physical appearance indicates that this may not be true.

23.    Within sixty (60) days of signing the Consent Judgment, the A&J Defendants shall engage, at their own expense, an independent third-party monitor ("Independent Monitor") to monitor compliance with the FLSA and the terms of this Amended Consent Judgment at all facilities where the A&J Defendants process poultry or meat or otherwise operate or perform work.  Starting four months after the A&J Defendants retain the Independent Monitor, the Independent Monitor shall conduct at least quarterly unannounced visits to monitor the A&J Defendants' worksites, and more frequently if the Independent Monitor or the Acting Secretary determines additional monitoring to be warranted. The Independent Monitor shall be selected from a list of potential monitors provided by the Acting Secretary or as otherwise agreed upon with the Acting Secretary. The monitoring provision shall be in effect for three (3) years from the date of entry of this Amended Consent Judgment.

a.    To ensure the A&J Defendants' compliance with the FLSA and this Amended Consent Judgment, the Independent Monitor must document, at a minimum: notes from employee interviews; the name, address, phone number of each employee performing work at the relevant facility and whether the employee is classified as FLSA exempt, FLSA non-exempt; if the employee is paid based on a daily rate; if the employee is paid in cash or by check; the start and end times of each employee's work day for every work day during the period covered by the third-party audit; the regular rate of pay for each employee; the gross weekly straight time and overtime wages owed to each employee for each pay period

covered by the third-party audit based on the employee's hours worked and regular rate of pay; and the gross weekly straight time and overtime wages actually paid to each employee for each pay period covered by the third party audit;

      b.    The Independent Monitor shall conduct interviews with workers at the facilities where the A&J Defendants process poultry or meat or otherwise perform work. Such interviews and other communications between workers and the Independent Monitor may be kept confidential (except to authorized representatives of the U.S. Department of Labor) at the option of each worker and copies of all notes and interviews conducted by the monitor must be turned over by the monitor to the District Director, West Covina office, U.S. Department of Labor, along with the audit report, if requested by the District Director, West Covina office, U.S. Department of Labor.

      c.    If the A&J Defendants and the Acting Secretary are not able to agree on a monitor, the Acting Secretary may file a motion asking the Court to select the Independent Monitor.

      d.    The Independent Monitor shall have the ability to communicate with the A&J Defendants' employees in their primary language(s), or, shall be provided with an interpreter as necessary at the A&J Defendants' expense.

      e.    The A&J Defendants shall cooperate fully with the Independent Monitor, including by permitting it to enter facilities where the A&J Defendants process poultry or meat, or otherwise perform work, without prior notice; inspect the working conditions at such facilities; inspect all books, records, and documents requested by the Independent Monitor, including employee time, payroll, and personnel records; and perform other duties necessary to conduct the monitoring.

      f.    Subject to Paragraph 23(h), if the Independent Monitor finds violations of the FLSA, or regulations issued under the FLSA, that result in back wages due, the A&J Defendants shall pay the wages due within 30 days and shall

prepare a written report concerning the violations found and payments made, and provide a copy of such report to the District Director of the Wage and Hour Division's West Covina office.

g.    Subject to Paragraph 23(h), if the Independent Monitor directs changes in the A&J Defendants' policies and/or procedures, or directs the A&J Defendants to take action to comply with the FLSA or regulations issued under the FLSA, the A&J Defendants shall be required to do so promptly.

h.    Should the A&J Defendants disagree with the findings and/or directives of the Independent Monitor, the A&J Defendants shall notify the Acting Secretary in writing within ten (10) business days of receiving the disputed instruction from the Independent Monitor describing the issues in dispute and explaining the reasons why they disagree with the Independent Monitor. The Acting Secretary shall thereafter make a determination. If the A&J Defendants disagree with the Acting Secretary's determination, the Acting Secretary at its discretion may present this issue to the Court for adjudication.

24.    If the A&J Defendants hire, retain or utilize a third-party service provider, including Defendant The Right Hire, to provide labor to process poultry or meat within an establishment owned, operated or controlled by an A&J defendant ("A&J Facility"), and/or otherwise to provide timekeeping or payroll services with respect to those workers processing poultry or meat within an A&G Facility, then:

a.    That A&J Defendant shall enter into a written contract with such third-party requiring that the third-party affirmatively:

i.    acknowledge receipt and review of the Amended Consent Judgment;

ii.    agree to provide a copy of the Amended Consent Judgment and Exhibit 1 to any employees or workers who work within an A&J

Facility;

        iii.      agree to comply with the federal minimum wage, overtime, recordkeeping, and child labor provisions of the FLSA as well as all state law wage requirements;

        iv.      agree to screen all current and future workers to ensure that no oppressive child labor is being employed at an A&J Facility;

        v.      agree to implement and maintain a timekeeping system that accurately records the hours worked by employees consisting of the minimum requirements: employees must clock-in their start time and end time each day; employees must record their own hours and neither the third-party service provider nor the A&J Defendants shall clock-in for employees except to correct any timekeeping errors, such as when an employee fails to appropriately clock-in or out;

        vi.      agree to allow the A&J Defendants access to all payroll and timekeeping records it creates for employees working within an A&J Facility;

        vii.      agree to comply with any investigation conducted by the Acting Secretary pursuant to Section 11 of the FLSA, including freely interviewing any employees or workers performing work within an A&J Facility; and

        viii.      agree to quarterly monitoring per the terms set forth in Paragraph 253;

        b.      At the A&J Defendants' expense, the Independent Monitor selected pursuant to Paragraph 23 above, shall conduct annual monitoring of any payroll or labor provider to ensure that such provider's payroll and labor practices with respect to the workers processing poultry or meat are being compensated in compliance with the FLSA, that no oppressive child labor is being employed, and that the third-party is otherwise complying with the above terms of the contract as set forth above in Paragraphs 24(a)(i) to (viii);

c.    The A&J Defendants shall notify the Acting Secretary of any suspected or actual violations of the FLSA which are occurring with respect to any workers performing work for the A&J Defendants within three (3) business days of learning of such suspected or actual violations.

25.    The A&J Defendants are permanently enjoined from communicating, directly or indirectly, in any manner to any third party, such as other owners of poultry or meat processing companies, regarding whether any employee may have or may be perceived to have engaged in protected activity under the FLSA, including but not limited to any connection any employee may have with the Department of Labor, and are specifically enjoined from taking any other action to restrict or blacklist such employee from seeking or obtaining any other work.

26.    The A&J Defendants have an ongoing duty to provide the Acting Secretary with access to all records required to be made, kept, or preserved under Section 11 of the FLSA, including all other time, piece rate, employee, and payroll records, upon request and no later than three (3) days after such request is made.

27.    Should the A&J Defendants maintain a video monitoring system of employees and/or workers, the A&J Defendants shall immediately provide the Acting Secretary with access to review this footage upon request. The requirements of this Paragraph shall remain in effect for a period of at least four (4) years from the date of entry of this Amended Consent Judgment.

28.    The A&J Defendants have an ongoing duty to provide an earnings statement to each of their employees, and ensure that any employee employed to assist in the processing of poultry or meat, such as deboners, packers, cleaners, or others, each time they are paid, beginning with the first paycheck issued following entry of this Amended Consent Judgment, with the following information: (1) gross wages paid to the employee each workweek; (2) total hours worked each workweek; (3) a list of itemized deductions from employees' pay; (4) net wages

earned; (5) the inclusive start and end dates of the pay period; (6) the employee's name and employee identification number; (7) the applicable hourly rates (including straight time and overtime rates) and corresponding number of hours worked at each hourly rate, or, as applicable, the applicable piece rates (including the precise formula used to calculate the piece rate and overtime rates) and corresponding number of pieces worked at each piece rate; (8) total straight-time wages paid; and (9) total overtime wages paid. The A&J Defendants shall produce these earnings statements to the Acting Secretary upon request and no later than three (3) days after such request is made.

29.    All documents produced by the A&J Defendants as required under this Amended Consent Judgment must be produced in an electronic, searchable format to the extent the A&J Defendants' documents are maintained or may be generated in such a format. If a document cannot be generated in an electronic, searchable format, then the A&J Defendants shall produce the document in an electronic format with all metadata intact to the extent such metadata exists. If a subject document is produced in a comma-separated-values ("CSV") file, such as an Excel spreadsheet, then the documents must be produced in such format and not converted to a PDF. Documents must be organized in a manner that clearly identifies the nature of the documents.

30.    The A&J Defendants have an ongoing duty to comply with the FLSA as specified above and in all other respects, including but not limited to the minimum wage requirements under Section 6 of the FLSA, 29 U.S.C. § 206, including compensating employees for any wait time as required under 29 C.F.R. Part 785. The A&J Defendants shall also provide any "rest and recovery periods and other nonproductive time" as required under California Labor Code 226.2 and compensate any time donning and doffing equipment as required under 29 C.F.R. Part 790; and reimburse any expenses incurred by an employee in furtherance of

his employer's interests and properly reimbursable by the employer as required under Section 7(e)(2) of the FLSA, 29 U.S.C. § 207(e)(2), such as expenses incurred by employees in connection with the purchase or maintenance of equipment, tools, clothing, and supplies required for the employee's work.

31.    The A&J Defendants, their agents, servants, and employees, and any person in active concert or participation with them, shall not in any way directly or indirectly, demand, require or accept any of the monies received by any former or current employees which have been paid under the terms of the Consent Judgment or this Amended Consent Judgment. The A&J Defendants shall not threaten or imply that adverse action will be taken against any employee because of their receipt of funds to be paid under this Amended Consent Judgment. Violation of this Paragraph may subject the A&J Defendants to equitable and legal damages, including punitive damages and civil contempt.

32.    The A&J Defendants have an ongoing duty to comply with the FLSA and maintain payroll practices at any business they own, operate, or control, currently and in the future, including as follows:

a.    The A&J Defendants shall accurately record the information required by 29 C.F.R. § 516.2 in the payroll records, including, for each employee (1) all hours worked by each workday and workweek, including all pre- and post-shift work such as maintaining clothing, tools, and supplies, and donning and doffing; (2) the rate(s) of pay for each of the hours worked during a workweek; (3) the number of pieces completed by each workday and workweek, if employee is paid per piece; (4) the total weekly straight-time earnings due for the hours worked during the workweek; (5) the total premium pay for overtime hours; and (6) the dollar value of all equipment, tools, clothing, and supplies paid for and used in or specifically required for the employee's work;

b.      The A&J Defendants shall record all wages paid to employees, regardless of the manner of payment, on payroll records;

c.      The A&J Defendants shall not alter or manipulate time or payroll records to reduce the number of hours actually worked by an employee, and the A&J Defendants shall not encourage workers to under-report their hours worked; and

d.      The A&J Defendants shall not direct supervisors, employees, or payroll preparers to falsify time or payroll records in any manner including reducing the number of hours worked by employees, and the A&J Defendants shall direct supervisors and payroll providers to encourage workers to report all hours worked.

33.    If the A&J Defendants choose to calculate pay through any type of individual production-based system, such as a piece rate system, the A&J Defendants shall immediately provide the following written notice to all current piece rate employees, and all future piece rate employees upon hire (or rehire), and in a language understood by them, and shall place the notice prominently around the workplace. The notice shall be translated into Spanish and any other language necessary for employees to be able to read the notice, and it shall read as follows:

*Employees who are paid on a piece rate still get overtime payments. You are entitled to advance notice of any piece rate payment, including exactly how the piece rate is calculated. You are entitled to advance notice if your employer makes any change to the piece rate payment. You are entitled to an individual piece rate and cannot be required to accept a group piece rate. Your regular piece rate payment does NOT include overtime, but it does include straight time pay for all hours worked. If you work more than 40 hours in a work week, your employer must pay you a premium for overtime, above and beyond your piece rate. For example, if you worked*

*50 hours in a workweek and earned $1,000 from your piece rate work, your employer must pay you $100 in overtime premium pay. This amount is calculated by taking your $1,000 pay and dividing it by the 50 hours you worked to get $20 per hour. $20 per hour is your regular rate. The overtime premium means you must get paid 1.5 times of your regular rate. For the extra 10 hours you worked that week, you should have gotten paid $20 x 1.5 = $30 per hour. Since your employer paid you $20/hour, your employer owes you $10 overtime premium for the 10 hours you worked past 40 hours, meaning your employer owes you 10 x $10 or $100 in overtime premium pay. Your employer must give you a pay stub that shows your weekly earnings, how those earnings were calculated, and shows all deductions. Your employer must pay you for any time that you spend putting on or removing tools and clothes you are required to wear for work, such as knives to cut chicken or gloves, robes, and hairnets for your safety and food hygiene. Lastly, your employer must pay you for certain "wait time," such as time spent waiting for poultry or meat to arrive, time spent waiting to count to count the number of boxes of poultry or meat that are cut, and time spent waiting to be paid.*

34.     The A&J Defendants agree to a rebuttable presumption that any future employer or business operating at 15268 Proctor Ave, Suite A, City of Industry, California 91745 shall be deemed to be the A&J Defendants' successors for which the A&J Defendants will be held personally liable for any non-compliance with the terms of this Amended Consent Judgment, and subject to any contempt remedies which this Court deems appropriate, absent clear and convincing evidence otherwise.

35.     For purposes of contacting the Acting Secretary under the terms of this Amended Consent Judgment, the A&J Defendants shall notify:

FIRST AMENDED CONSENT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS A&J MEATS, PRISCILLA HELEN CASTILLO, OLIMPIA BRAN, AND O'BRAN LEASING COMPANY

Case No. 2:24-cv-04507-MSC-SK                                                    Page 23

1    Wage Hour Division, West Covina District Office

2    Attention: District Director

3    100 N. Barranca Street, Suite #850

4    West Covina, California 91791

5    ///

## JUDGMENT

36.    **IT IS HEREBY ORDERED THAT,** pursuant to Section 16(c) and (e) of the FLSA and in favor of the Acting Secretary as a judgment owed to the United States of America and against the A&J Defendants, A&J Defendants shall pay the monies owed above as follows: the A&J Defendants made an initial payment on August 6, 2024 in the amount of $62,516.00, consisting of the Civil Monetary Penalties owed as a result of the A&J Defendants' illegal employment of minors, which have been assessed and finally determined pursuant to Section 16(e) of the FLSA, 29 U.S.C. § 216(e).  The A&J Defendants have also made three additional payments: a payment on August 8, 2024 for $77,484.00, and two payments on August 30, 2024 for $60,000.00 and $500.83.  The August 8, 2024 and August 30, 2024 payments and all additional payments A&J Defendants will make consist of payments for disgorgement of profits associated with revenues earned from the unlawful employment of minors and the related shipment or delivery for shipment in commerce of child labor "hot goods" in violation of Section 12(a) of the FLSA, 29 U.S.C. § 212; and interest.

Pursuant to this Judgment, **IT IS HEREBY ORDERED THAT:**

37.    The A&J Defendants shall pay the remaining $179,449.17 owed under this Amended Consent Judgment, plus monthly interest at a rate of 4%, per the following schedule:

| Payment Due Date | Principal | Interest (4%) | Total Payment Due |
|---|---|---|---|
| Oct. 1, 2024 | $59,899.83 | $601.00 | $60,500.83 |
| Nov. 1, 2024 | $60,099.50 | $401.33 | $60,500.83 |
| Dec. 1, 2024 | $60,299.83 | $201.00 | $60,500.83 |
| | | TOTAL | $181,502.49 |

The A&J Defendants shall make the above payments required by this Amended Consent Judgment online by ACH transfer, credit card, debit card, or digital wallet by going to https://www.pay.gov/public/form/start/77761888, or by going to

www.pay.gov and searching "WHD Back Wage Payment - WE Region". Payments shall reference Case Number #1993201.

38.     In the event of any default in the timely making of any payment due hereunder, the full judgment amount, which then remains unpaid, plus post-judgment interest at the rate of 10% per year, from the date of the A&J Defendants' default until paid in full, shall become due and payable upon the Acting Secretary's sending by ordinary mail a written demand to the last available addresses of the A&J Defendants then known to the Acting Secretary with electronic copies also concurrently e-served on the A&J Defendants or, if applicable, their counsel. Upon the Acting Secretary's request, the Court will issue an amended judgment reflecting the amounts due based on the A&J Defendants' default.

**FURTHER, IT IS HEREBY ORDERED THAT**

39.     The filing, pursuit, and/or resolution of this proceeding with the entry of this Judgment shall not act as or be asserted as a bar to any action or claim under FLSA § 16(b), 29 U.S.C. § 216(b).

40.     Each Party shall bear its own fees and other expenses incurred by such Party in connection with any stage of this proceeding, including but not limited to attorneys' fees, which may be available under the Equal Access to Justice Act, as amended.

41.     The Court shall retain jurisdiction of this action for purposes of enforcing compliance with the terms of this Amended Consent Judgment.

///

42.    Nothing in this Amended Consent Judgment shall affect the validity of the June 20, 2024 Consent Judgment (Docket 17) as it pertains to Defendant The Right Hire, Inc., which shall remain in full force and effect as against Defendant The Right Hire, Inc.

IT IS SO ORDERED.

Dated: September 17, 2024

_____

Mark C. Scarsi
United States District Judge

# EXHIBIT 1

## <u>NOTICE TO EMPLOYEES OF YOUR RIGHTS UNDER THE FLSA</u>

There are state, local, and federal laws related to your workplace rights.  The Department of Labor (DOL) enforces the Fair Labor Standards Act (FLSA).

<u>YOUR IMMIGRATION STATUS DOES NOT MATTER AND DOES NOT IMPACT YOUR WORKPLACE RIGHTS</u>

Under the FLSA, your employer must pay you:
   1) Federal minimum wage ($7.25 per hour) for all hours worked.  (Your employer may owe you a higher minimum wage under California or local law.)
   2) Overtime pay if you work more than forty hours per week.

You must be paid for all work you do for your employer. This might include: cutting chicken, throwing away garbage, moving chicken around the warehouse, cleaning your work station and work tools, sharpening your knives, wearing or removing required clothes and tools, waiting to count how many boxes of chicken you have cut, waiting for chicken to arrive if your employer instructs you to wait, and other activities your employer requires you to do.

Your employer must correctly document and report each hour you work and all pay you receive.

**It is illegal for anyone to harm you because you talked to a DOL representative, participated in a DOL investigation, or spoke up about your workplace rights.  It is illegal for your employer to take the following actions because you exercised your rights:**

   o   Scream threats at you;
   o   Reduce your work hours or your pay;
   o   Fire you or fire any friends or relatives that work with you;
   o   Refuse to pay you for all hours you work;
   o   Refuse to hire you, or a relative or friend of yours;
   o   Report you to the government for deportation;
   o   Threaten you with legal problems or threaten to use their lawyer to harm you;
   o   Make any other threat or take any harmful action against you.

It is also illegal for anybody to make you sign a document in which you promise to tell a judge or any representative of the DOL false information about the hours you work, pay you receive, or anything else related to your FLSA rights.  Any document you have signed promising to tell false information to a judge or anyone else has no legal value and cannot be used against you.

**If any of these actions occur, please immediately contact the DOL hotline at (866) 487-9243**

## AVISO A LOS EMPLEADOS DE SUS DERECHOS BAJO LA FLSA

Existen leyes estatales, locales y federales relacionadas con sus derechos laborales. El Departamento de Trabajo (DOL) hace cumplir La Ley de Normas Justos De Trabajo (FLSA en inglés).

## SU ESTATUS MIGRATORIO NO IMPORTA Y NO AFECTA SUS DERECHOS LABORALES.

Según la FLSA, su empleador debe pagarle:

1) Salario mínimo federal ($7.25 por hora) por todas las horas trabajadas. (Su empleador puede deberle un salario mínimo más alto bajo la ley del estado de California o las leyes locales.)

2) Pago de overtime por horas extras si trabaja más de cuarenta horas por semana.

Se le debe pagar por todo el trabajo que haga para su empleador. Esto podría incluir: cortar pollo, recoger huesos, mover pollo de un lugar a otro dentro de la planta, limpiar su estación de trabajo y su herramienta, filar sus cuchillos, ponerse o quitarse la ropa o la herramienta requerida para hacer su trabajo, esperar por contar el número de cajas cortadas, esperar por el pollo si su empleador le dice que tiene que esperar, y otras actividades que su empleador lo requiere hacer.

Su empleador debe documentar y reportar correctamente cada hora que trabaja y todos los pagos que recibe.

**Es ilegal que alguien le haga daño porque habló con un representante del DOL, participó en una investigación del DOL o habló sobre sus derechos ante la FLSA. Es ilegal que su** empleador tome las siguientes medidas porque ejerció sus derechos de FLSA:

- o Gritarle amenazas a usted;
- o Reducir sus horas de trabajo o la cantidad que gana;
- o Terminarlo o terminar a un colega o familiar que trabaja con usted;
- o Negarse a pagarle por todas las horas que trabaja;
- o Negarse a emplear a usted, o a un familiar suyo;
- o Reportar al gobierno su deportación;
- o Amenazarlo con problemas legales o amenazar con usar al abogado del empleador para hacerle daño;
- o Hacer cualquier otra amenaza o tomar cualquier acción dañina contra usted.

También es ilegal que alguien le obligue a firmar un documento en el que promete decirle a un juez o a cualquier representante del DOL información falsa sobre las horas que trabaja, el pago que recibe o cualquier otra cosa relacionada con sus derechos a la FLSA. Cualquier documento que haya firmado con la promesa de proporcionar información falsa a un juez o a cualquier otra persona no tiene valor legal y no puede usarse en su contra.

**Si ocurre alguna de estas acciones, comuníquese inmediatamente con el DOL al:**
**(866) 487-9243**

FIRST AMENDED CONSENT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS A&J MEATS, PRISCILLA HELEN CASTILLO, OLIMPIA BRAN, AND O'BRAN LEASING COMPANY

Case No. 2:24-cv-04507-MSC-SK                                                      Page iv